UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL ROBERT BLY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No.18-cv-02450-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 31 |

Plaintiff Carl Robert Bly seeks social security benefits for a combination of mental and physical impairments, including depression, anxiety, somatic symptom disorder, schizoid personality disorder, gastritis/colitis, carpal tunnel syndrome, status post left metacarpal fracture, hypertension, mild bilateral hearing loss, and obesity. (Administrative Record ("AR") 27, 351, 921.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 23, 31.) Because the Administrative Law Judge's ("ALJ") weighing of the medical evidence and adverse credibility finding are not supported by substantial evidence and the ALJ erred in failing to consider Plaintiff's personality disorder and whether he met or equaled a listing at Step Three, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

//

//

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 3, 10.)

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id*. In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if

the ALJ did not apply proper legal standards." *Id*.

## PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act") on May 15, 2013 alleging a disability onset date of September 1, 2007. (AR 24, 350.) His application was denied both initially and upon reconsideration. (AR 24.) Plaintiff then submitted a written request for a hearing before an ALJ and his first hearing was held before ALJ Richard Laverdure on February 17, 2016. (*Id*.) At that hearing, Plaintiff amended his disability onset date to February 21, 2012. (*Id*.) Plaintiff appeared telephonically at two later hearings on August 31, 2016 and October 24, 2016. (*Id*.) At the October 24, hearing Plaintiff's counsel requested that two medical experts be called to testify, but the ALJ denied that request. (*Id.*)

On December 23, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 24-38.) Plaintiff filed a request for review of the ALJ's decision which was denied on March 5, 2018 making the ALJ's decision the Commissioner's final decision. (AR 1-3.) Plaintiff commenced this action for judicial review of the Commissioner's decision on April 24, 2018, pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE RECORD

The ALJ found Plaintiff not disabled under section 1614(a)(3)(A) of the Act taking into consideration the testimony and other evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 24-38.)

At Step One, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since his disability onset date of February 21, 2012. (AR 26.)

At Step Two, the ALJ found that Plaintiff has the following severe impairments: gastritis/colitis, status post left metacarpal fracture, rule out bilateral carpal tunnel syndrome (without electromyography confirmation), hypertension, mild bilateral hearing loss, obesity, depression, anxiety, and polysubstance abuse/addiction (alcohol, marijuana, methamphetamine, heroin, and ecstasy). (AR 27.)

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of

3

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926). (AR 28.) For Plaintiff's mental impairments, the ALJ considered listings 12.04, 12.06, and 12.09. (*Id.*) The ALJ found that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation such that the Paragraph B criteria were not satisfied. (AR 29.)

The ALJ next considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) except that he can occasionally perform repetitive fingering and can tolerate no more than moderate background noise (such as that in an office or grocery store) and that mentally, he can perform nonpublic simple, routine tasks, with no more than occasional co-worker interaction. (AR 29.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some alleged symptoms; however, [Plaintiff's] and his mother's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 30.) As relevant here, the ALJ gave significant weight to the physical and mental assessments of the State Agency consultants Drs. David and Gregg and no weight to examining psychologist Dr. Wiebe. (AR 35-36.)

At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 37.)

At Step Five, the ALJ concluded that Plaintiff was not disabled because there were jobs that exist in significant numbers in the national economy that he could perform including housekeeper, laundry worker, and garment sorter. (AR 37-38.) The ALJ based this determination on the testimony of the vocational expert and Plaintiff's residual functional capacity, age, education, and work experience. (AR 38.)

**DISCUSSION**

Plaintiff raises numerous issues with respect to the ALJ's decision. First, Plaintiff contends that the ALJ's Step Two determination was in error because the ALJ failed to consider

4

whether Plaintiff's personality disorder was a severe impairment. Second, Plaintiff insists that the ALJ erred in failing to consider the combined effects of Plaintiff's impairments at Step Three. Next, Plaintiff maintains that the ALJ erred in his weighing of the medical evidence and with respect to his credibility determination. Finally, Plaintiff insists that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ erred in failing to obtain the testimony of a medical expert.

### A. The ALJ's Step Two Determination

The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which includes physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). This inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citation omitted). An impairment is not severe only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." *See* Social Security Ruling ("SSR") 82-28, 1985 WL 56856, at *3 (1985); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Here, there is no dispute either that Plaintiff alleged disability based on personality disorder or that the ALJ failed to consider whether Plaintiff's personality disorder was a severe impairment. The Commissioner nevertheless insists that the ALJ's failure to consider whether Plaintiff's personality disorder was a severe impairment was harmless because the ALJ resolved this step in Plaintiff's favor and the ALJ elsewhere mentioned Plaintiff's personality disorder and gave great weight to the state agency consultative physicians whose opinions "referenced personality disorder and incorporated that impairment in their RFC finding." (Dkt. No. 31 at 3:15.) While the error maybe harmless at step two, it still could have "prejudiced [plaintiff] in

5

step three (listing impairment determination) or step five (RFC)...." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). An ALJ must take into account limitations caused by all of an individual's impairments, whether labeled severe or not, in formulating the RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id*. at 1049 (emphasis in original).

Here, the ALJ acknowledged Plaintiff's alleged claim of disability based on personality disorder (AR 30) and Dr. Wiebe's diagnosis of personality disorder (AR 921, 1067), but did not analyze or consider whether Plaintiff's personality disorder would impact his RFC (and in fact, rejected Dr. Wiebe's opinion in its entirety). The Commissioner's post-hoc suggestion that the ALJ must have considered the personality disorder because he gave great weight to the state agency consultative physicians' opinions and they had considered Plaintiff's personality disorder is unavailing. *See Bray v. Commissioner of Social Security Admin*., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Thus, while the ALJ's failure to consider Plaintiff's personality disorder at Step Two was harmless given that the ALJ found that Plaintiff had severe impairments and proceeded to Step Three in the sequential analysis, on remand, the ALJ should consider Plaintiff's personality disorder at this step and the subsequent steps in the analysis.

**B. The ALJ's Step Three Listing Determination**

At Step Three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to determine whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503,

6

512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).  The claimant, that is Plaintiff, bears the burden of proving that he satisfied the listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff insists that the ALJ's Step Three finding was in error because while the ALJ identified nine separate impairments, including three mental impairments, he never discussed the impairments in combination or how they affect one another.  Plaintiff also contends that the ALJ's finding that none of Plaintiff's mental impairments meet or equal a listing singly or in combination was not supported by substantial evidence because the ALJ failed to discuss any of the medical evidence and instead based his determination solely on Plaintiff's own statements.

The Commissioner counters that the ALJ was only required to consider the impairments in combination if Plaintiff presented evidence of equivalence.  To the extent that the Commissioner contends that Plaintiff did not do so here, that argument fails as Plaintiff argued and identified specific evidence in his pre-hearing statement to the ALJ that Plaintiff met the listing level impairments for 12.04 Affective Disorder, 12.06 Anxiety-Related Disorder, and/or 12.08 Personality Disorder.  (AR 550-561.)  Where, as here, "the claimant presents evidence in an effort to establish equivalence," the ALJ is "required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination."  *Burch*, 400 F.3d at 683.  The Commissioner's suggestion that—as with the error at Step Two—any error here is essentially harmless because the ALJ considered the evidence of impairments cumulatively when formulating the RFC is no more availing.  "A bare statement that [Plaintiff] does not meet a listing, without appropriate evaluation or discussion of the medical evidence, is insufficient to conclude that [Plaintiff's] impairment does not meet or medically equal a listed condition." *Laborin v. Berryhill*, 692 Fed. Appx. 959, 962 (9th Cir. 2017).  Rather, "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

Accordingly, the ALJ erred in the Step Three analysis.

**C. The ALJ's Weighing of the Medical Evidence**

In the Ninth Circuit, courts must "distinguish among the opinions of three types of

7

physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830-31.

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted). In weighing medical opinions, the ALJ may consider (1) the examining relationship, (2) the treatment relationship, (3) the supportability, (4) the consistency, (5) the specialization, and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c)(5). In conducting this review the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Plaintiff contends that the ALJ erred in rejecting the opinion of examining psychologist Dr. Katherine Wiebe while giving great weight to the opinions of non-examining consultants Drs. Davis and Gregg. The ALJ found that Dr. Wiebe's "opinion about limitations and GAF scores are at complete odds with the psychiatric findings in the Tiburicio Vasquez Health Center treatment notes and the evaluation at Winton Wellness Center in October 2012" and that her opinion was inconsistent with Plaintiff's activities of daily living. (AR 37.) Neither basis is a specific and

8

legitimate reason for rejecting Dr. Wiebe's opinion that is supported by substantial evidence.

First, the ALJ's finding that Dr. Wiebe's opinion was at odds with the treatment notes from Tiburicio Vasquez is simply inaccurate. The ALJ relied on treatment records from Tiburicio Vasquez Health Center which he found showed "no ongoing treatment with a mental health professional and benign psychiatric findings." (AR 36 (citing portions of Exhibits 15F (AR 963-1026), 17F (1038-1055), 27F (1110-1139).) However, the portions of the medical records that the ALJ cites do not support his conclusion. The ALJ appears to be relying on the following generic statement in each record:

> **Psychiatric:**
> The patient is oriented to time, place, person, and situation.
> The patient has normal insight, exhibits normal judgment,
> The patient demonstrates the appropriate mood and affect.

(AR 965, 974, 979, 984, 988, 996, 1000, 1004, 1008 1014, 1019, 1022, 1041.) But the ALJ ignores the personalized portion of each of these records discussing Plaintiff's anxiety and depression. For example, on March 24, 2014, Plaintiff reported that functioning was "somewhat difficult" and he presented with "depressed mood, difficulty falling asleep, diminished interest or pleasure, excessive worry, fatigue, racing thoughts, restlessness and bad dreams." (AR 1007.) He was therefore scheduled for a follow-up regarding depression and anxiety in one month, encouraged to contact Blue Cross for mental health resources, and was prescribed, Remeron, an anti-depressant. (AR 1008.) A little over a month later, Plaintiff had the same report regarding his difficulty functioning and anxiety and his Remeron dose was doubled. (AR 1003-05.) A month later, Plaintiff reported no improvement stated that the increased dosage of Remeron was not working, so the dosage was again increased and he was also prescribed Lorazepam, another anti-depressant. (AR 995-996.) A month later, in July 2014, Plaintiff noted an improvement of symptoms and was switched to paroxetine, a SSRI used to treat depression and anxiety. (AR 991-992.) However, the following month, Plaintiff reported no improvement on the paroxetine so the dosage was increased. (AR 987-988.) In January 2015, he again reported difficulty with functioning and presented with depressed mood, difficulty falling asleep, diminished interest or pleasure, and thoughts of death of suicide. (AR 982.) He was advised to continue to take his

paroxetine daily and lorazepam as needed. (AR 984.) The following month, he presented with anxious/fearful thoughts and his dosage or paroxetine was increased. (AR 977-979.) Six months later, Plaintiff reported that his anxiety was associated with nausea and weight gain, he was still taking his paroxetine daily, and requested a refill of lorazepam to help him relax. (AR 963.) Five months later, Plaintiff reported that there was a worsening of previously reported symptoms, functioning was "very difficult," he reported feeling down, depressed and hopeless, and he his medication was switched to sertraline. (AR 1038-1041.) Substantial evidence does not support the ALJ's conclusion that these treatment records reflect "benign psychiatric findings." (AR 36.) *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) ("An ALJ may not cherry-pick and rely on portions of the medical record which bolster his findings.")

Second, the ALJ erred in finding that Dr. Wiebe's opinion was inconsistent with Plaintiff's "admitted ability to prepare meals, perform household chores, shop in stores, play games on a computer, use public transportation, drive, perform gardening, exercise two to three times per week, bicycle and walk 30 minutes per day, swim and perform rigorous work activity in 2012, 2014 and 2016." (AR 37.) The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). That Plaintiff drives his car, uses public transportation, goes shopping in stores, and prepares his own meals, and exercises two to three times per week does not mean he does not suffer from severe mental health issues. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Even if this were not the case, the ALJ ignores that Plaintiff testified that he performs these activities of daily living with his mother with whom he lives and not on his own. (AR 137-139 (testifying that he helps his mom with the cooking and shopping, that his mom does his laundry but he carries the clothes to the washer, and that his mom cleans his room).)

While Plaintiff's ability to engage in "rigorous work activity" could constitute a valid basis

10

for discrediting Dr. Wiebe's testimony regarding Plaintiff's ability to work, the evidence the ALJ cites to does not support the conclusion that Plaintiff engaged in "rigorous work activity." (AR 37.) Of the ALJ's record citations in support of this statement, the only one that discussed any current work activity is the October 19, 2012 psychiatric evaluation from Winton Wellness Center which stated that he had just returned from a roofing project in Modesto and he "picks up day labor." (AR 858.) At his hearing, Plaintiff testified that two years prior (that is, in 2014) he had worked for *two weeks* helping a friend paint, but the last time before that that he worked was 2003. (AR 127.) The ALJ's conclusion that Plaintiff's activities of daily living contradict Dr. Wiebe's opinion is therefore not supported by substantial evidence.

Third, the ALJ erred in failing to consider the different time period in which Drs. Davis and Gregg gave their opinions and Dr. Wiebe gave her two opinions. Drs. Davis and Gregg's opinions were based on the evidence as of February and April 2014 whereas Dr. Wiebe followed up her 2013 opinion with an evaluation in February 2016—nearly two years after the opinions of Drs. Davis and Gregg. (*Compare* AR 161-178 and 182-195 *with* AR 909-925 and AR 1056-1072.) The ALJ did not even discuss the findings in Dr. Wiebe's 2016 evaluation and instead just characterized it as the same as her September 2013 report. (AR 36.) Likewise, the ALJ put considerable weight in the fact that Plaintiff had been assessed with a GAF score of 75 and 79 by the Winton Wellness Center without acknowledging that those scores were from 2012 and 2013—before any of the Tiburicio Vasquez Health Center records discussed above and before Dr. Wiebe's February 2016 report.

Accordingly, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving great weight to the opinions of Drs. Davis and Gregg while wholesale rejecting the more recent opinion of Dr. Wiebe.

### D. The ALJ's Adverse Credibility Finding

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

11

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (citations omitted). The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Here, the ALJ did not find that Plaintiff was malingering, but did find that while Plaintiff's "medically determinable impairment could reasonably be expected to cause some alleged symptoms" his statements "concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 30.) Plaintiff insists that the ALJ's reliance on this boilerplate language as the basis for the adverse credibility finding is legally deficient and warrants reversal. The Court agrees.

"To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that testimony.'" *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (quoting *Brown–Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)). Here, the ALJ did not give *any* reasons, and instead, discussed the medical evidence at length, but did not tie that evidence to *any* particular portions of Plaintiff's testimony that he found not credible.

In an attempt to bolster the ALJ's adverse credibility finding, the Commissioner points to an earlier portion of the ALJ's decision regarding when Plaintiff last engaged in substantial gainful activity where he stated that Plaintiff's testimony was not entirely accurate and refers to 2014 and 2016 work activity. (AR 27.) However, as discussed *supra*, there was no evidence of 2016 work activity, only work activity in 2012 and two weeks of work in 2014. Thus, to the extent that this is the basis for the ALJ's adverse credibility finding it is not a specific, clear and

12

convincing reasons for finding Plaintiff not credible. To the extent that the Commissioner offers other bases for the ALJ's adverse credibility determination including inconsistent medical evidence regarding Plaintiff's colitis, Plaintiff's ability to walk, and Plaintiff's activities of daily living, none of these are specifically identified by the ALJ as a basis for the credibility finding here. "Long-standing principles of administrative law require [this court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted). "A clear statement of the agency's reasoning is necessary because [the court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter*, 806 F.3d at 492.

Accordingly, the ALJ's boilerplate statement fails to provide specific, clear and convincing reasons in support of his adverse credibility finding. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review.") (internal quotations omitted).

\* \* \*

Because the ALJ's consideration of the medical evidence and adverse credibility finding are not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's additional arguments regarding the RFC and the ALJ's failure to obtain medical expert testimony. The ALJ's errors here go to the heart of the disability determination and are not harmless. *See Treichler*, 775 F.3d at 1099 ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (internal quotation marks and citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

13

### E. Remand

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

The first prong of the test is not satisfied here because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the ALJ's failure to (1) consider Plaintiff's personality disorder at Step Two and whether his impairments meet or equal a listing at Step Three, (2) provide legally sufficient reasons for rejecting the medical opinion of examining psychologist Dr. Wiebe—particularly, her 2016 opinion, and (3) provide any basis for his boilerplate adverse credibility finding.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 23 and 31.

**IT IS SO ORDERED.**

Dated: September 16, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

14